**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

THOMAS L. THOMAS, on behalf of Artheray D. Thomas,

    Petitioner,

v.

DORENE DISANTO; and MIKE DEWINE,

    Respondents.

CIVIL ACTION NO.: 5:17-cv-7

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Thomas Thomas ("Thomas"), proceeding *pro se*, has filed a cause of action seeking habeas corpus and coram nobis relief pursuant to the All Writs Act, 28 U.S.C. § 1651, and 28 U.S.C. § 2241.[1] (Doc. 1.) Thomas has also filed a Motion for Leave to Proceed *in Forma Pauperis*, a Motion to Forward State Records, and a Motion for Process of Service. (Docs. 2, 3, 4.) For the reasons which follow, the Court **DISMISSES as moot** Thomas' Motions for Leave to Proceed *in Forma Pauperis*[2], to Forward State Records, and for Process of Service. For these same reasons, I **RECOMMEND** the Court **DISMISS** this cause of action and **DIRECT** the Clerk of Court to **CLOSE** this case.

---

[1] Thomas' Petition presents little more than a different side of the same coin as his Notice of Removal in Case Number 5:15-cv-36, <u>DiSanto v. Thomas</u>, (S.D. Ga. May 26, 2015). This Court granted the Motion to Deny Remand, denied Thomas' Notice, and remanded those proceedings to the Lake County, Ohio, court conducting the child custody proceedings. In so doing, this Court explained to Thomas the several ways by which this Court lacked jurisdiction over his claims. R. & R. and Order, <u>DiSanto v. Thomas</u>, (S.D. Ga. Feb. 2, 2016, and Feb. 19, 2016), ECF Nos. 32, 35. Some of the bases for this Court's lack of jurisdiction in that case are no less applicable here, as discussed in this Report.

[2] Thomas has paid the applicable filing fee, thus rendering his Motion for Leave to Proceed *in Forma Pauperis* moot.

**BACKGROUND**

Thomas filed his Petition on January 12, 2017. (Doc. 1.) He asserts that his son is being "unlawfully restrained" of his liberty as a result of child custody proceedings in the State of Ohio. (Id. at p. 3.) Thomas requests that this Court reverse the unlawful and invalid orders the Ohio state courts have issued. (Id. at p. 11.) Thomas names as Respondents Dorene Disanto, the mother of his son and a resident of the State of Ohio, and Mike DeWine, the Attorney General for the State of Ohio. Thomas raises several issues in his Petition, which the Court addresses in turn.

**DISCUSSION**

**I.    Whether Thomas Filed his Petition in the Proper Court**

Thomas is challenging child custody proceedings arising in the State of Ohio. Because he is challenging child custody proceedings and he names residents of Ohio as Respondents, his Petition should have been filed in the Northern District of Ohio, Eastern Division, rather than in the Waycross Division of this Court. 28 U.S.C. § 115(a)(1); Ramirez v. Hastings, No. CV214-085, 2015 WL 1022363, at *2 (S.D. Ga. Mar. 9, 2015) ("[A] habeas petition . . . generally is available only for challenging the execution of a sentence or the nature of confinement, 'not the validity of the sentence itself or the fact of confinement,' and is filed in the district of" the alleged unlawful detention.) (internal citation omitted). A district court may raise the issue of defective venue *sua sponte*. Collins v. Hagel, No. 1:13-CV-2051-WSD, 2015 WL 5691076, at *1 (N.D. Ga. Sept. 28, 2015) (citing Kapordelis v. Danzig, 387 F. App'x 905, 906–07 (11th Cir. 2010) (affirming *sua sponte* transfer, pursuant to 28 U.S.C. § 1406(a), of *pro se* prisoner's civil rights action from New York to Georgia); Berry v. Salter, 179 F. Supp. 2d 1345, 1350 (M.D. Ala. 2001); cf. Lipofsky v. New York State Workers Comp. Bd., 861 F.2d 1257, 1259 (11th Cir.

1988); and Nalls v. Coleman Low Fed. Inst., 440 F. App'x 704, 706 (11th Cir. 2011)). When venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). "The court may transfer the case if (1) the proposed transferee court is one in which the action 'could have been brought' and (2) transfer would be 'in the interest of justice.'" Leach v. Peacock, Civil Action No. 2:09cv738-MHT, 2011 WL 1130596, at *4 (M.D. Ala. Mar. 25, 2011) (citing 28 U.S.C. § 1406(a)). Trial courts generally have broad discretion in determining whether to transfer or dismiss a case. Id. (citing England v. ITT Thompson Indus., Inc., 856 F.2d 1518, 1520 (11th Cir. 1988)). Ordinarily, this Court would transfer this case, in the interest of justice, as venue is not proper in this Court.

However, as explained below, in this case, the interest of justice would not be served by transferring this case to the Northern District of Ohio, Eastern Division. Thomas' Petition would be subject to dismissal in that court for the reasons which follow, and thus, transferring this case to another district would be futile. Accordingly, the Court should **DISMISS** Thomas' Petition on the basis of improper venue.

## II. Whether This Court can Review State Court Proceedings

Thomas is essentially requesting that this Court review child custody proceedings which occurred within the State of Ohio. However, this Court is without jurisdiction to do so.

Pursuant to the Rooker-Feldman doctrine, the Court is without jurisdiction over claims which essentially seek review of a state court judgment. "The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and provides that, as a general matter, federal district courts lack jurisdiction to review a final state court decision." McCorvey v. Weaver, 620 F.

App'x 881, 882 (11th Cir. 2015). Nor under the Rooker-Feldman doctrine may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment." Datz v. Kilgore, 51 F.3d 252, 253 (11th Cir. 1995) (quoting Staley v. Ledbetter, 837 F.2d 1016, 1018 (11th Cir. 1988)). "Rooker-Feldman applies because, among the federal courts, Congress authorized only the [United States] Supreme Court to reverse or modify a state court decision." Helton v. Ramsay, 566 F. App'x 876, 877 (11th Cir. 2014) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Put succinctly, this Court is not an appeals court to which a losing or disgruntled state court party can appeal an unfavorable decision. This Court and other federal courts frequently find that the Rooker-Feldman doctrine prevents federal courts from hearing claims based on a state court's custody determination or parental rights' termination. See, e.g., Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1334 (11th Cir. 2001) (finding that the Rooker-Feldman doctrine barred jurisdiction over the plaintiffs' due process claims against state officials because the success of those claims would require finding that the state court wrongly decided to terminate the plaintiffs' parental rights and wrongly denied their petition for return of custody); Taylor v. Randolph, 594 F. App'x 578 (11th Cir. 2014) (Rooker-Feldman doctrine barred mother's claims against state court judges and employees of sheriff's office and child protection agency, alleging that defendants' decisions in child-custody proceedings and child well-being matters violated her and her child's fundamental rights); Plunkett v. Rountree, No. CV214-015, 2015 WL 1505970, at *12 (S.D. Ga. Mar. 31, 2015) (dismissing claims based on juvenile court's removal of plaintiff's children, the litigation in juvenile court, and the treatment of her children in foster care); Daw v. Cowan, No. 3:11CV96/RV/EMT, 2013 WL 5838683, at *5 (N.D. Fla. Oct. 30, 2013) ("[T]o the extent Plaintiff seeks review of any final judgments issued by the state court, including those that

4

terminated her parental rights, this court lacks jurisdiction over the matter."). Further, the Eleventh Circuit Court of Appeals has "also determined those officers and other government personnel acting pursuant to, or in concert with, child-custody or child well-being proceedings fall within the Rooker-Feldman doctrine because their acts are inextricably intertwined with state court judgments." Taylor, 594 F. App'x at 580 (citing Goodman, 259 F.3d at 1334.)[3]

---

[3] To the extent the child custody proceedings are ongoing (which does not appear to be the case), this Court should abstain from entertaining the merits of Thomas' Petition under the Younger abstention rule. Younger v. Harris, 401 U.S. 37 (1971); 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003) ("Although Younger concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'"). The Younger abstention doctrine reflects "a strong federal policy against federal[ ] court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "This 'settled law,' intended to preserve the independence of our concurrent judicial systems, requires 'sensitive consideration of ongoing proceedings in state courts' and 'that a federal court "tread lightly" when a state proceeding is already underway.'" Stephens v. Sluss, No. CV407-089, 2007 WL 2106225, at *2–3 (S.D. Ga. Aug. 15, 2007) (quoting The News-Journal Corp. v. Foxman, 939 F.2d 1499, 1508 (11th Cir. 1991) (quoting Blalock v. United States, 844 F.2d 1546, 1549 (11th Cir. 1988)); see Adams v. Florida, 185 F. App'x 816, 817 (11th Cir. 2006) (affirming the dismissal of a 42 U.S.C. § 1983 complaint seeking to enjoin a civil contempt finding in child support enforcement case under the Younger doctrine).

Where "vital state interests" are involved, a federal court should abstain from hearing a case "unless state law clearly bars the interposition of the constitutional claim." Middlesex Cty. Ethics Comm., 457 U.S. at 432 (quoting Moore v. Sims, 442 U.S. 415, 426 (1979)). To determine whether Younger requires abstention in a given case, a federal court must ask three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." 31 Foster Children, 329 F.3d at 1274 (quoting Middlesex Cty., 457 U.S. at 432). If the answer to all three questions is "yes," then a federal court must abstain from hearing a case in order to avoid interfering with the ongoing state-court proceedings.

"The federal judiciary has traditionally abstained from deciding cases concerning domestic relations. As a result, federal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." Ingram v. Hayes, 866 F.2d 368, 369 (11th Cir. 1988) (citations omitted) (holding that, although diversity of citizenship existed, the district court properly abstained from exercising jurisdiction in domestic relations case). "However, the domestic relations exception does not justify abstention in all diversity cases involving intra-family disputes." Moussignac v. Ga. Dep't of Human Res., 139 F. App'x 161, 162 (11th Cir. 2005). Federal courts should not abstain when the following policies favoring federal abstention are absent: "the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Id. (citing Kirby v Mellenger, 830 F.2d 176, 178 (11th Cir. 1987), and Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir. 1978)). "Consequently, federal courts should dismiss the action

Because Thomas is seeking review of child custody proceedings in the State of Ohio, this Court lacks jurisdiction over the matter. Thus, the Court should **DISMISS** Thomas' Petition for lack of jurisdiction under the Rooker-Feldman doctrine.

## III.     Whether the All Writs Act is Applicable

The All Writs Act permits courts to "issue all writs necessary or appropriate in aid of their . . . jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A petition seeking relief under the All Writs Act is a collateral proceeding and is not predicated on a specific cause of action. Klay v. United HealthGroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004). Rather, the movant "must simply point to some ongoing proceeding, or some past order or judgment [of the court], the integrity of which is being threatened by someone else's action or behavior." Id. However, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Pa. Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985).

As noted throughout this Report, this Court lacks jurisdiction to address the merits of Thomas' Petition. Thomas also fails to establish that the integrity of the state court proceedings has been threatened by another party or that he lacks other avenues of relief. Consequently, Thomas cannot use the All Writs Act to attack child custody proceedings in this Court. The fact

---

only if hearing the claim would mandate inquiry into the marital or parent-child relationship." Ingram, 866 F.2d at 370 (citing Jagiella v. Jagiella, 647 F.2d 561, 565 (5th Cir. 1981)).

This Court's consideration of the relative merits of the contentions Thomas sets forth in his Petition would result in an inquiry into domestic relations matters, which are generally reserved for the courts of any given state. In addition, Thomas has not shown the absence of the State of Ohio's interests in the child custody proceedings or called into question the competency of that court. Instead, Thomas' assertions merely reveal his displeasure with the Ohio court's determination.

that Thomas was ultimately unable to obtain relief through the courts in the State of Ohio does not provide grounds for the Court to invoke the All Writs Act. Id. (affirming district court's dismissal of petitioner's collateral attack on his conviction, brought pursuant to the All Writs Act, as a successive habeas petition "[b]ecause [petitioner] could not circumvent the statutory requirements for filing a successive [28 U.S.C.] § 2254 petition by invoking the All Writs Act[.]"). Here, Thomas asks this Court to invalidate the child custody proceedings arising in the State of Ohio, and this Court lacks jurisdiction over such a request. Such a request should be brought in the State of Ohio. Accordingly, the Court should **DISMISS** Thomas' Petition for this reason, as well.

**IV.     Whether Thomas can Bring Claims for Habeas Corpus Relief**

Thomas ostensibly seeks to bring this cause of action on his son's behalf pursuant to 28 U.S.C. § 2241. (Doc. 1.) Two different statutes govern the single post-conviction remedy of the writ of habeas corpus, 28 U.S.C. §§ 2241 and 2254. "The difference between the statutes lies in the breadth of the situations to which they apply." Thomas v. Crosby, 371 F.3d 782, 785 (11th Cir. 2004) (quoting Medberry, 351 F.3d at 1059). A writ of habeas corpus may issue to an individual pursuant to Section 2241 if that individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2254 "applies to a subset of those to whom" Section 2241(c)(3) applies. Id. at 786. This Section applies to "'a person in custody *pursuant to the judgment of a State court*' who is 'in custody in violation of the Constitution or law or treaties of the United States.'" Id. (quoting Section 2254(a)) (emphasis in original). While "the habeas corpus remedy is authorized by § 2241," it is "also subject to § 2254 and all of its attendant restrictions." Peoples v. Chatman, 393 F.3d 1352, 1353 (11th Cir. 2004). Generally, "[a] parent has standing to bring a habeas corpus action on

7

behalf of [his] minor children." Jenicek ex rel. J.J. v. Sorenson Ranch Sch., No. CIV. 14-4422 SRC, 2014 WL 7332039, at *2 (D.N.J. Dec. 16, 2014) (quoting Lehman v. Lycoming Cty. Children's Servs. Agency, 648 F.2d 135, 138 n.3 (3d Cir. 1981) (plurality opinion), *aff'd*, 458 U.S. 502 (1982)).

Under 28 U.S.C. § 2254, a "person in custody pursuant to a judgment of a State court" may seek a writ of habeas corpus from a federal district court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To be "in custody" within the meaning of Section 2254, the Supreme Court has historically required that a petitioner suffer "substantial restraints" on his liberty "as a result of a state-court criminal conviction." Lehman, 458 U.S. at 510. The typical habeas corpus petitioner is a prisoner who wishes to challenge his conviction. See id. at 508. In a handful of cases, the Supreme Court has extended the remedy to petitioners who were not "actually in the physical custody of the State." Id. However, the petitioners in each of these cases, like prisoners, "suffered substantial restraints not shared by the public generally." Id. at 510. "Consistent with its view that § 2254 requires a deprivation of liberty, the . . . Supreme Court has never held that habeas corpus may be invoked to challenge state-court decisions regarding parental rights or child custody." Janicek, 2014 WL 7332039 at *3 (citing Lehman, 458 U.S. at 510–11) (explaining that a child who is seized pursuant to a state court order and placed in a foster home is "not in the 'custody' of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus"). "Such children, though separated from their parents, 'are not prisoners,' and 'suffer no unusual restraints not imposed on other children.'" Id. (internal citation omitted). "Thus, the Supreme Court has instructed, extending [habeas corpus] to challenges to state child custody decisions—challenges based on alleged

constitutional defects collateral to the actual custody decision—would be an unprecedented expansion of the jurisdiction of the lower federal courts." Id. (internal citation and punctuation omitted) (alteration in original). According to the Supreme Court in Lehman:

> The considerations in a child-custody case are quite different from those present in any prior case in which this Court has sustained federal-court jurisdiction under § 2254. The federal writ of habeas corpus, representing as it does a profound interference with state judicial systems and the finality of state decisions, should be reserved for those instances in which the federal interest in individual liberty is so strong that it outweighs federalism and finality concerns.

458 U.S. at 515–16.

There is nothing in Thomas' Petition or the attachments thereto suggesting that extreme circumstances existed in the state court custody proceedings that would create a basis for an exception to the broad general rule that the Supreme Court stated in Lehman.[4] Accordingly, to the extent that Thomas seeks relief in this federal action under habeas corpus principles, the Court should **DISMISS** Thomas' Petition for this reason, as well. See Holm v. Strange, No. 116CV02036MHHSGC, 2016 WL 7407099, at *2–3 (N.D. Ala. Dec. 22, 2016).

## V. Whether This Court has Jurisdiction Pursuant to 28 U.S.C. § 1738A and 25 U.S.C. §§ 1911 Through 1922

Thomas alleges in conclusory fashion that his son should be "loved, nurtured, raised, and/or supported according to clearly established Federal Laws", such as 28 U.S.C. § 1738A and 25 U.S.C. §§ 1911 through 1922. (Doc. 1, pp. 8, 10.)

---

[4] In his dissent in Lehman, Justice Blackmun suggested that, under "extreme circumstances," a federal court may issue a writ of habeas corpus to "secure a child's release from state custody" if, for example, the child is subjected to conditions constituting a "struggle for liberty by one imprisoned under the aegis of the state." 458 U.S. at 519 n.5 (1982) (Blackmun, J., dissenting). Thomas has not alleged that his son has suffered any such restraints on his liberty while in state custody. In fact, Thomas fails to establish that his son has suffered any restraints on his liberty or that his son is or has ever been in state custody for purposes of habeas corpus relief.

### A. Section 1738A

"[F]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. Section 1331 of Title 28 of the United States Code provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally determined by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Smith v. GTE Corp., 236 F.3d 1292, 1310 (11th Cir. 2001) (quotation and alteration omitted). "The Supreme Court has held that neither the Full Faith and Credit Clause nor 28 U.S.C. § 1738A, the Parental Kidnaping [sic] Prevention Act ("PKPA"), creates a federal cause of action for purposes of § 1331 jurisdiction." Stewart v. Lastaiti, 409 F. App'x 235, 236 (11th Cir. 2010) (citing Thompson v. Thompson, 484 U.S. 174 (1988)).

This Court lacks jurisdiction to entertain Thomas' claims under Section 1738A, as his claims do not present a federal question for this Court's review. As a result, the Court should **DISMISS** Thomas' Petition on this basis.

### B. Sections 1911 Through 1922

Sections 1911 through 1922 of Title 25 of the United States Code concern child custody as part of the Indian Child Welfare Act ("ICWA"). 25 U.S.C. §§ 1901, *et seq.* "'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians

recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians[.]" 25 U.S.C. § 1903(8). "The term 'Indian'. . . shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood." 25 U.S.C. § 479. The Secretary of the Interior "shall publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 479a-1(a). This list is to be published every year on or before January 30. 25 U.S.C. § 479a-1(b). The Pembina Nation Little Shell Band of North America, of which Thomas claims he and his son are members, is not listed among the "566 tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs" (an agency within the Department of the Interior) "by virtue of their status as Indian tribes[.]" Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942-02 (Jan. 14, 2015).

"[T]he unanimous authority of the federal courts appears to affirm that the Pembina Nation Little Shell Band of North America is not federally recognized[ ]" as an "Indian tribe under the ICWA." Neal v. Arizona, No. CV-09-8203-PCT-JAT, 2010 WL 231552, at *2 (D. Ariz. Jan. 14, 2010), *aff'd*, 436 F. App'x 811 (9th Cir. 2011) (citing Reed v. U.S. Bank Nat'l Assoc., 212 F. App'x 707, 708 (9th Cir. 2006) ("The district court did not abuse its discretion in declining to recognize the Pembina court judgment because the Pembina Nation Little Shell Band is not a federally recognized tribe[.]"); Mulder v. Lundberg, 154 F. App'x 52, 55 (10th Cir. 2005) (noting that "the Bureau of Indian Affairs does not recognize [Pembina Nation Little Shell

Band of North America] or its courts."); Delorme v. United States, 354 F.3d 810, 814 n.6 (8th Cir. 2004) ("The Little Shell Band of Chippewa Indians of North Dakota (also known as the Little Shell Pembina Band of North America) is a federally unrecognized band[.]"); United States v. White, No. 07-00395-01-CR-W-HFS, 2008 WL 4816987, at *3 (W.D. Mo. Oct. 31, 2008) ("The unanimous authority of the federal court has found that the Pembina Nation is not a federally recognized tribe. As such, the Pembina Nation has no recognized authority to issue license plates for motor vehicles traveling in the state of Missouri.") (citations omitted); United States v. Stowbunenko-Saitschenko, No. CR 06-0869-PHX-DGC, 2007 WL 865392, at *1 (D. Ariz. Mar. 20, 2007) ("The [Pembina Nation Little Shell Band of North America] has not been formally recognized by the United States."); Richmond v. Wampanoag Tribal Court Cases, 431 F. Supp. 2d 1159, 1167–69 (D. Utah 2006) (stating that Pembina Nation Little Shell Band is not a federally recognized Indian tribe)); see also 74 Fed. Reg. 40218-02 (Aug. 11, 2009) (the Bureau of Indian Affairs' publication listing "Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs," which lists over 560 such tribes, none of which are the Little Shell Band).

As the Pembina Nation Little Shell Band of North America is not recognized as eligible for services by the Department of Interior's Bureau of Indian Affairs, any member of this group of people is not entitled to use of the ICWA. Thus, to the extent Thomas claims membership to this group of people, he cannot invoke the ICWA as a basis for this Court's jurisdiction.

Further, under the ICWA, a "child custody proceeding shall mean and include" foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C. § 1903(1). This definition does not include custody issues, as at issue in this case. Thus, even if Thomas were eligible to use the ICWA as a member of a recognized tribe under

this Act, he could not invoke the ICWA as a jurisdictional basis in this case to justify this Court's jurisdiction. See Comanche Indian Tribe of Okla. v. Hovis, 53 F.3d 298, 302 (10th Cir. 1995) (recognizing the definition of "child custody proceedings" under the ICWA and noting that this term does not include "placement based upon . . . an award, in a divorce proceeding, of custody of one of the parents."); Oglala Sioux Tribe v. Van Hunnik, 100 F. Supp. 3d 749, 755 (D.S.D. 2015) ("The Indian Child Welfare Act . . . was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.") (quoting Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32 (1989)).

The issue of a minor child's custody concerns is at stake in this cause of action. By definition, such matters are excluded from the definition of child custody proceedings under the ICWA. Accordingly, Thomas cannot invoke the jurisdiction of this Court pursuant to the ICWA, even if he were eligible to proceed under this Act.

Moreover, "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). "The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." 25 U.S.C. § 1911(d).

As noted above, the Pembina Nation is not a recognized Indian tribe under the ICWA. In addition, there is no evidence before the Court that the minor child, who may not be of Indian descent, resides in or is domiciled within the reservation of the Pembina Nation (if such were recognized as an Indian tribe under the ICWA). There is no basis of jurisdiction under the ICWA, and this Court is without jurisdiction to entertain the relative merits of the allegations in Thomas' Petition.

## VI. Whether Thomas is Entitled to a Writ of Coram Nobis

The writ of error coram nobis has been abolished in civil cases. Fed. R. Civ. P. 60(e); United States v. Morgan, 346 U.S. 502, 506. However, this writ is available in the criminal context for those individuals who can no longer seek post-conviction relief. United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002). Federal courts have the authority to issue this writ pursuant to the All Writs Act, 28 U.S.C. § 1651, but "this is an extraordinary remedy that is available only in the most compelling circumstances to remedy errors 'of the most fundamental character.'" Sun v. United States, 342 F. Supp. 2d 1120, 1126 (N.D. Ga. 2004) (quoting Morgan, 346 U.S. at 511–12). A writ of coram nobis "is only appropriate when claims could not have been raised by direct appeal, or the grounds to attack the conviction became known after a completed sentence when [28 U.S.C.] § 2255 relief is unavailable." Id.

Because Thomas' Petition is a civil proceeding, he is not entitled to the issuance of a writ of coram nobis. In fact, Thomas does not even attempt to show how he is entitled to such relief in a case concerning child custody issues. Consequently, the Court should **DISMISS** Thomas' Petition on this basis.

**CONCLUSION**

For the reasons set forth above, the Court **DISMISSES as moot** Thomas' Motions for Leave to Proceed *in Forma Pauperis*, to Forward State Records, and for Process of Service. (Docs. 2, 3, 4.) For these same reasons, I **RECOMMEND** the Court **DISMISS** this cause of action and **DIRECT** the Clerk of Court to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation is to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of June, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA